1  SCOTT VOELZ (S.B. #181415)
   svoelz@omm.com
2  PAUL A. HOLTON (S.B. #313047)
   pholton@omm.com
3  ALLISON BADER (S.B. #324306)
   abader@omm.com
4  JAMIE BUTTS (S.B. #346647)
   jbutts@omm.com
5  O'MELVENY & MYERS LLP
   400 South Hope Street
6  18th Floor
   Los Angeles, California 90071-2899
7  Telephone:    +1 213 430 6000
   Facsimile:    +1 213 430 6407
8
   Attorneys for Defendant
9  Walmart Inc.

10

11                 **UNITED STATES DISTRICT COURT**

12               **NORTHERN DISTRICT OF CALIFORNIA**

13

14  CRYSTAL SHUGARS, *in her capacity as*          Case No. 5:24-cv-02765-NC
    *Private Attorneys General Representative*, and
15  NICCOLE LE'ROY, *on behalf of herself and*      **DEFENDANT WALMART INC.'S**
    *all others similarly situated*,                **NOTICE OF MOTION AND MOTION**
16                                                   **TO COMPEL ARBITRATION;**
                        Plaintiffs,                  **MEMORANDUM OF POINTS AND**
17                                                   **AUTHORITIES**
            v.
18                                                   [Filed concurrently with Declaration of
    WALMART INC. d/b/a SPARK DRIVER f/k/a            Ashley O'Brien; Declaration of Alonzo
19  DELIVERY DRIVERS, INC.,                          Cardenas; Declaration of Scott Voelz]

20                      Defendants.                  Judge:     Hon. Magistrate Judge
                                                                Nathanael Cousins
21                                                   Courtroom: 5
                                                     Date:      June 19, 2024
22                                                   Time:      11:00 a.m.

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2     **TO PLAINTIFFS CRYSTAL SHUGARS, NICCOLE LE'ROY, AND THEIR**

3     **COUNSEL OF RECORD:**

4         **PLEASE TAKE NOTICE** that on June 19, 2024, at 11:00 a.m., or as soon thereafter as

5     this matter may be heard in the United States District Court for the Northern District of California,

6     located at 280 South Second Street, San Jose, California 95113, Defendant Walmart Inc.

7     ("Walmart") will, and hereby does, move for an order to compel arbitration of all causes of action

8     in Plaintiffs Crystal Shugars and Niccole Le'Roy's (together, "Plaintiffs") Complaint on an

9     individual basis, including Shugars' individual PAGA claim; to dismiss, or in the alternative, to

10    stay Plaintiffs' putative class claims; and to stay Shugars' representative PAGA causes of action

11    on the grounds that there are valid, written arbitration agreements between Plaintiffs and Walmart.

12    Walmart brings this Motion pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, 3, & 4.

13        This Motion is based on this Notice of Motion and Motion, the accompanying

14    Memorandum of Points and Authorities, the Declaration of Ashley O'Brien filed concurrently

15    herewith, the Declaration of Alonzo Cardenas filed concurrently herewith, the Declaration of Scott

16    Voelz filed concurrently herewith, all the pleadings, papers, and records on file herein, all matters

17    on which judicial notice may be taken, any oral argument that may be presented at the hearing, and

18    upon such other matters as this Court deems just and necessary.

19

20

21

22

23

24

25

26

27

28

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 2

    A.    The Spark Driver App. ................................................................................... 2

    B.    The Parties. ..................................................................................................... 3

    C.    The TOU. ........................................................................................................ 4

    D.    The Agreement. .............................................................................................. 4

III.  PROCEDURAL HISTORY ....................................................................................... 6

IV.   THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS ............ 7

    A.    The Agreement Is Governed By the FAA, Which Favors Arbitration. .................. 7

    B.    The FAA Does Not Exempt Plaintiffs From Arbitration. ........................................ 8

    C.    Plaintiffs' Claims All Fall Within the Scope of the Agreement. .......................... 10

        1.    Plaintiffs' Individual Claims Are Arbitrable. ............................................. 10

            a.    Plaintiffs' Argument That They Were Misclassified As Independent Contractors Is Arbitrable. ......................................... 10

            b.    Plaintiffs' Wage Claims Are Arbitrable. ........................................ 11

            c.    Plaintiffs' Unfair Competition Claim Is Arbitrable. ..................... 11

        2.    Plaintiffs Must Arbitrate Their Claims on an Individual Basis ................. 12

            a.    Plaintiffs Agreed to Arbitrate Their Claims and Not Participate in Any Putative Class Action. ...................................... 12

            b.    Shugars Agreed to Arbitrate Any Individual PAGA Claims. ........ 13

        3.    Any Question About the Scope of the Agreement to Arbitrate Must Be Decided by an Arbitrator. .............................................................................. 14

    D.    The Agreement Is Valid and Enforceable. .............................................................. 15

        1.    The Agreement Is Not Procedurally Unconscionable. ............................... 16

        2.    The Agreement Is Not Substantively Unconscionable. ............................. 17

V.    SHUGARS' REPRESENTATIVE PAGA CLAIM SHOULD BE STAYED PENDING COMPLETION OF THE ARBITRATION. ......................................................................... 18

VI.   CONCLUSION ......................................................................................................... 19

**TABLE OF AUTHORITIES**

Page

**Cases**

*Adolph v. Uber Techs., Inc.*,
   14 Cal. 5th 1104 (2023) ................................................................................................. 13, 19

*Ajzenman v. Off. of Comm'r of Baseball*,
   No. CV-203643-DSF(JEMX), 2020 WL 6037140 (C.D. Cal. Sept. 14, 2020) ...................... 11

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ............................................................................................................... 8

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ............................................................................................................ 2, 8

*Amirani v. Arthur J. Gallagher Serv. Co., LLC*,
   No. 8:20-cv-01526-MCS (DFMx), 2020 U.S. Dist. LEXIS 250014 (C.D. Cal.
   Dec. 28, 2020) ..................................................................................................................... 17

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................................... 2

*AT&T Techs., Inc., v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ............................................................................................................. 10

*Blair v. Superpedestrian HQ*,
   No. 2:23-cv-02153-MCS-AGR, 2023 U.S. Dist. LEXIS 80426 (C.D. Cal. May
   8, 2023) ......................................................................................................................... 16, 18

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ................................................................................................ 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .............................................................................................. 10

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ............................................................................................................... 8

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002) ........................................................................................ 15, 17

*Circuit City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002) .............................................................................................. 15

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................................. 15

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004) ............................................................................................... 15

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street,*
    35 Cal. 3d 312 (1983) .......................................................................................... 10

*Flora v. Prisma Labs, Inc.,*
    No. 23-cv-00680-CRB, 2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) ............................ 16, 17

*Grear v. Comcast Corp.,*
    No. C-14-05333, 2015 WL 926576 (N.D. Cal. Mar. 3, 2015) ................................................ 18

*Green Tree Fin. Corp.-Ala. v. Randolph,*
    531 U.S. 79 (2000) ............................................................................................................. 8

*Gregg v. Uber Techs., Inc.,*
    89 Cal. App.  5th 786 (2023) ............................................................................................. 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    586 U.S. 63 (2019) ........................................................................................................... 15

*Iskanian v. CLS Transp. Los Angeles, LLC,*
    59 Cal. 4th 348 (2014) ..................................................................................................... 13

*Kaplan v. Athletic Media Co.,*
    No. 23-cv-00229-JST, 2023 WL 8587981 (N.D. Cal. Dec. 8, 2023) ............................... 17

*Kilgore v. KeyBank, Nat'l Ass'n,*
    718 F.3d 1052 (9th Cir. 2013) ................................................................. 15, 16, 17, 18

*Longboy v. Pinncale Prop. Mgmt. Serv., LLC,*
    No. 23-cv-01248-AMO, 2024 WL 815550 (N.D. Cal. Feb. 23, 2024) .................................... 18

*Martinez v. Leslie's Poolmart, Inc.,*
    No. 8:14-CV-01481-CAS, 2014 WL 5604974 (C.D. Cal. Nov. 3, 2014) ........................... 8

*Meyer v. T-Mobile USA Inc.,*
    836 F. Supp. 2d 994 (N.D. Cal. 2011) ...................................................................... 8

*Mohamed v. Uber Techs., Inc.,*
    848 F.3d 1201 (9th Cir. 2016) .................................................................................... 16, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ............................................................................................................. 10

*Mundi v. Union Sec. Life Insur. Co.,*
    555 F.3d 1042 (9th Cir. 2009) ....................................................................................... 15

*Nicholas v. Uber Techs., Inc.,*
    No. 19-cv-08228-PJH, 2020 WL 4039382 (N.D. Cal. July 17, 2020) ................................... 19

**TABLE OF AUTHORITIES**
(Continued)

Page

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC,*
    55 Cal. 4th 223 (2012) .......................................................................................... 8, 18

*Reed v. Spark Driver,*
    No. 3:24-cv-00057 (D. Or. Jan. 9, 2024) ................................................................ 9

*Rent-A-Center, West, Inc. v. Jackson,*
    561 U.S. 63 (2010) ................................................................................................ 15

*Sandquist v. Lebo Auto., Inc.,*
    1 Cal. 5th 233 (2016) ............................................................................................ 15

*Shelton v. Delivery Drivers, Inc.,*
    No. 8:22-cv-02135- DOC, 2023 WL 2629027 (C.D. Cal. Jan. 31, 2023) .................... 9, 13, 16

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999).................................................................................. 8

*Vazquez v. Tommy Bahama R&R Holdings, Inc.,*
    No. 3:22-cv-01881-JES(KSC), 2023 WL 8264554 (S.D. Cal. Nov. 29, 2023)...................... 14

*Viking River Cruises, Inc. v. Moriana,*
    596 U.S. 639 (2022) .............................................................................................. 13

*Walters v. Luxottica of Am. Inc.,*
    No. 8:23-cv-01099 FWS(MAA), 2024 WL 661195 (C.D. Cal. Jan. 5, 2024)........................ 13

**Statutes**

9 U.S.C. § 1 ...................................................................................................................... 8

9 U.S.C. § 2 ...................................................................................................................... 2, 8, 15

9 U.S.C. § 3 ...................................................................................................................... 17, 18

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

3

4

5

6

7

8

9

10

11

The Spark Driver platform is an app-based delivery platform that allows independent contractors to receive opportunities to deliver grocery and other general merchandise from Walmart's (and other participating local retailers') stores to customers' homes.  (Declaration of Ashley O'Brien ("O'Brien Decl."), ¶ 3.)  As part of contracting with Walmart to provide these services, Plaintiffs Crystal Shugars ("Shugars") and Niccole Le'Roy ("Le'Roy") (collectively, "Plaintiffs") each entered into a Non-Disclosure and Dispute Resolution Agreement with Defendant Walmart Inc. ("Walmart") (collectively, the "Agreement").[1]  The Agreement requires Plaintiffs to arbitrate "all disputes on an individual basis in final and binding arbitration" relating to the services they provided using the "Spark Driver" platform.  (*Id.*, Ex. A at 1.)

12

13

14

15

16

17

18

19

Indeed, Shugars' own actions demonstrate the applicability of the Agreement here.  She is already actively arbitrating essentially the ***same claims*** against Walmart that Plaintiffs now assert in this action.[2]  (*See* Voelz Decl., ¶ 2; Ex. A.)  Shugars initiated an arbitration in late 2023, participated in an informal telephonic dispute resolution conference (as required by the Agreement) in February 2024, and as recently as May 2024, her counsel engaged in discussions with Walmart regarding potential arbitrators and arbitration locations.  (*Id.*, ¶¶ 2-5.)  By actively pursing these claims in arbitration, Shugars acknowledges that she is bound by the Agreement, which prevents her and Le'Roy from maintaining these claims on a class wide basis.

20

21

22

Nevertheless, Plaintiffs filed this putative class and representative action against Walmart, alleging seven causes of action that are ***nearly identical*** to those raised in Shugars' arbitration

23

24

25

26

27

28

---

[1] The relevant provisions of the Agreements acknowledged by Plaintiffs are identical.  (*See generally* O'Brien Decl., Exs. A-B.)  Shugars and Le'Roy, respectively, acknowledged versions of the Agreement on three and nine separate occasions, each of which contained the same relevant provisions.  (*See id.*, ¶ 15, Exs. C-D.)  As such, Walmart will refer to the relevant Agreements as one singular "Agreement" and cite only Le'Roy's first agreement in this Motion.

[2] As explained further below, the primary difference between the two matters is that Shugars' arbitration claims are brought on an individual basis, while she asserts putative class and representative claims in the instant action.  (*See* Declaration of Scott Voelz ("Voelz Decl."), Ex. A at 1.)

1  demand.[3]  (*Compare* (Dkt. #1, Ex. C, ¶ 2) *with* (Voelz Decl., Ex. A at 2).)  Defendant then removed

2  this action to this Court pursuant to the Class Action Fairness Act.  (Dkt. #1.)  Plaintiffs' putative

3  class claims and Shugars' individual PAGA claims must now be compelled to individual

4  arbitration.

5      The Federal Arbitration Act ("FAA") mandates that all arbitration agreements "shall be

6  valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

7  revocation of any contract . . . ."  9 U.S.C. § 2.  The United States Supreme Court has consistently

8  interpreted the FAA to favor the enforceability of arbitration agreements and has instructed that

9  "courts must 'rigorously enforce' arbitration agreements according to their terms . . . ." *Am. Express*

10  *Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *see also AT&T Mobility*

11  *LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (holding that arbitration agreements are "'valid,

12  irrevocable, and enforceable' as written") (citation omitted).  Because the parties agreed to binding

13  arbitration, which unquestionably covers this action (as evidenced by Shugars' pending arbitration

14  demand), Plaintiffs' putative class claims and Shugars' individual PAGA claim should be

15  compelled to individual arbitration; Plaintiffs' putative class claims should be dismissed, or in the

16  alternative, stayed; and Shugars' remaining representative PAGA claim should be stayed pending

17  the conclusion of arbitration.

18  **II.    FACTUAL BACKGROUND**

19      **A.    The Spark Driver App.**

20      The "Spark Driver App" is "an app-based delivery platform that allows independent

21  

22  [3] The Complaint contains inconsistent language throughout, sporadically referring to "Plaintiffs,"
"Plaintiff," "Plaintiff Shugars," and "Plaintiff Le'Roy," (*See generally* Dkt. #1, Ex. C.)  However,
23  Shugars alone alleges representative claims under the California Private Attorneys General Act
("PAGA").  (*See id.*, Ex. C, Prayer for Relief, ¶ b ("Plaintiffs request that this Court enter the
24  following relief . . . . Enter Judgment in Plaintiff Shugars' favor on her PAGA claim pursuant to
Cal. Labor Code § 2699(c)").)  In addition, both Plaintiffs bring claims on behalf of a putative class
25  for alleged failure to reimburse all reasonably necessary expenditures, failure to pay minimum
wages, failure to pay overtime premiums, willful misclassification as independent contractors, and
26  engagement in unfair business practices.  (*See id.*, Ex. C, ¶ 2; *id.*, Ex. C, Prayer for Relief, ¶ c
("Plaintiffs request that this Court . . . . Certify a class action under Count II through VII and
27  appoint Plaintiffs Crystal Shugars and Niccol Le'Roy and their counsel to represent a class of Spark
Drivers who have worked in California.").)
28  

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

1  contractors to receive opportunities to deliver grocery and other general merchandise from
2  Walmart's (and other participating local retailers') stores to nearby customers' homes." (O'Brien
3  Decl., ¶ 3.)

4      **B.    The Parties.**

5      Plaintiffs are independent contractors who contracted to provide delivery services using the
6  Spark Driver platform.  Upon joining the Spark Driver platform, Shugars and Le'Roy, respectively,
7  acknowledged the Agreement on September 18, 2022, and May 4, 2022.  (O'Brien Decl., ¶¶ 5,11.)
8  Shugars acknowledged a revised Agreement two additional times, on October 25, 2022 and
9  December 16, 2022.  (*Id.*, Ex. C.)  Likewise, Le'Roy acknowledged versions of the Agreement
10 eight additional times, on May 17, 2022; May 26, 2022; June 3, 2022; June 4, 2022; June 11, 2022;
11 August 18, 2022; and December 8, 2022.  (*Id.*, Ex. D.)  The Agreement provided a mechanism to
12 opt out of the arbitration provisions, but neither of the Plaintiffs chose to do so.  (*Id.* ¶¶ 6, 10, 12,
13 Exs. A-B.)

14      While choosing to provide delivery services through the Spark Driver App, all orders
15 accepted by Plaintiffs originated from local store locations and were delivered to surrounding areas,
16 with none crossing state lines.   (Declaration of Alonzo Cardenas ("Cardenas Decl."), ¶ 8.)
17 Specifically, all orders accepted by Shugars originated from stores in the Modesto area, and were
18 delivered to surrounding areas in California.  (*Id.*)  Similarly, Le'Roy separately performed delivery
19 services in California and, for a brief time, Florida, where all orders originated from stores in
20 California and Florida, respectively, and were delivered to locations solely within each of those
21 states.[4]  (*Id.*)  Additionally, all items purchased by a customer for delivery by Plaintiffs came from
22 a specific local store's inventory.  (*Id.* ¶ 7.)  The purchased items were therefore taken off of the
23 shelf of a particular store, packaged for delivery, and then delivered by Plaintiffs to the customer.
24 (*Id.*)

25      Walmart is a corporation incorporated in the State of Delaware with its principal place of

26 ─────────────
27 [4] In California, Le'Roy performed delivery services in the Modesto area.  (Cardenas Decl., ¶ 8, Exs.
   B, D.)  In Florida, Le'Roy performed delivery services in the Fruitland Park-Spanish Springs area.
28 (*Id.* ¶ 8, Exs. C, E.)  Le'Roy never crossed state lines while performing deliveries in either state.
   (*Id.* ¶ 8.)

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

1     business in Bentonville, Arkansas.  (O'Brien Decl., ¶ 2.)

2         **C.**     <u>The TOU.</u>

3         A driver who chooses to contract on the Spark Driver platform must agree to comply with

4 the Walmart Spark Driver Mobile App Terms of Use ("TOU") in order to access and use the

5 platform.  (O'Brien Decl., Ex. E at 1 ("If you violate or do not agree to these Terms of Use, then

6 your access to and use of the Spark App is unauthorized . . . .").)[5]  In agreeing to the TOU, Plaintiffs

7 agreed that "any dispute between [them] and Walmart [would] be adjudicated solely on an

8 individual basis . . . .[including in] **a class, . . . private attorney general action, or other joint**

9 **action with respect to such dispute."** (*Id.* (emphasis in original).)  Therefore, Plaintiffs agreed to

10 bring claims, not on behalf of a representative group or putative class, but in their individual

11 capacity.

12         **D.**     <u>The Agreement.</u>

13         Through the Agreement, Plaintiffs and Walmart each agreed to resolve any and all claims

14 that either party may have against the other through arbitration:

15     •    The Agreement is "**intended to apply to the resolution of all disputes between the**

16        **Parties, and requires all such disputes to be resolved on an individual basis and only**

17        **by an arbitrator through final and binding arbitration and not by way of a court or**

18        **jury trial, nor a proceeding before any other governmental body, and not by way of a**

19        **class, collective, mass, or representative action or proceeding**." (O'Brien Decl., Ex. A at

20        7 (emphasis in original).)

21     •    "Disputes regarding the nature of Contractor's relationship with Walmart (including, but

22        not limited to, any claim that Contractor is an employee of Walmart), as well as **any claim**

23        **that Contractor brings on its own behalf as an aggrieved worker for recovery of**

24        **underpaid wages or other individualized relief (as opposed to a representative claim**

25        **for civil penalties) are arbitrable and must be brought in arbitration on an individual**

26

27

28

---

[5] As with the Agreement, Plaintiffs each acknowledged versions of the TOU on multiple occasions. (O'Brien Decl., Exs. C-D.)  The relevant provisions of the TOU are substantially similar.  As such, Walmart will refer to the TOU as a singular document, and cite the TOU acknowledged by both Plaintiffs. (*Id.*, Ex. E.)

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO. 5:24-CV-02765-NC)

**basis only as required by this Arbitration Provision.  Contractor agrees that any representative claim that is permitted to proceed in a civil court of competent jurisdiction must be stayed pending arbitration of Contractor's dispute regarding the nature of Contractor's relationship with Walmart and any claim that Contractor brings on its own behalf for individualized relief."** (*Id.*, Ex. A at 15 (emphasis added).)

- The Agreement "shall apply to **any and all disputes between the Parties regardless of whether brought by Walmart against Contractor or by Contractor against Walmart** . . ., including but not limited to: (1) **disputes arising out of or related to this Agreement**; (2) **disputes arising out of or related to Contractor's classification as an independent contractor**; (3) disputes arising out of or related to the actual or any alleged relationship between Contractor and Walmart, including termination of the relationship, whether arising under federal, state, or local law; and (4) disputes arising out of or relating to Contractor's performance of Services.  This Arbitration Provision also applies, without limitation, to **disputes regarding any city, county, local, state or federal wage-and-hour law, employment law,** trade secrets, **unfair competition, compensation,** meal or rest periods, **expense reimbursement,** uniform maintenance, training, termination, discrimination or harassment and . . . state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local statutory and legal claims . . . arising out of or relating to Contractor's relationship with Walmart . . . ." (*Id.*, Ex. A at 11-12 (emphasis added).)

- "The Parties expressly agree that this Arbitration Provision is **governed exclusively by the Federal Arbitration Act**, 9 U.S.C. §§ 1-16 ('FAA'), and evidences a transaction involving commerce, and Contractor agrees that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the FAA." (*Id.*, Ex. A at 7 (emphasis added).)

- The "Arbitration Provision is not a mandatory component of this Agreement or Contractor's contractual relationship with Walmart.  If Contractor does not want to be subject to this

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO. 5:24-CV-02765-NC)

Arbitration Provision, **Contractor may opt out** . . . ." (*Id.*, Ex. A at 20 (emphasis added).)

Accordingly, the Agreement clearly delineates the presence of an arbitration provision that, if the

driver does not choose to opt out of it, mandates that "all disputes between the Parties," be resolved

in final, binding arbitration.  (*Id.*, Ex. A at 7.)

### III.    **PROCEDURAL HISTORY**

On October 11, 2023, Shugars submitted a PAGA claim notice to the California Labor

Workforce and Development Agency.  (Dkt. #1, Ex. C,¶ 47.)

On or about October 12, 2023, Shugars presented Walmart with her arbitration demand.[6]

(*Id.*, Ex. C, ¶ 52.)  The central theory of the demand relates to Walmart's alleged "misclassification

of her as an independent contractor while she was driving for Walmart through its Spark Driver

app, and its resulting wage violations."  (Voelz Decl., Ex. A at 1.)  Specifically, Shugars alleges

seven claims against Walmart in her arbitration demand: (1) failure to reimburse necessary business

expenses; (2) failure to ensure drivers on the Spark Driver platform received the "appropriate

overtime premium for all overtime hours worked beyond forty per week or eight hours per day";

(3) willful misclassification of drivers on the Spark Driver platform as independent contractors;

(4) failure to ensure drivers received minimum wage for all hours worked; (5) failure to provide

meal and rest breaks; (6) failure to provide "accurate, itemized wage statements"; and (7) requiring

drivers on the Spark Driver platform to "sign illegal contracts."  (*Id.* at 2.)  These claims were

brought by Shugars in her individual capacity and include neither her individual nor her

representative PAGA claims.  (*See generally id.*)

On February 2, 2024, pursuant to the Agreement, Shugars, along with her counsel here,

participated in an informal telephonic dispute resolution conference.  (*Id.* ¶ 3.)  During that call,

she shared her intent to continue to arbitrate her claims with Walmart.  (*Id.*)  On March 14, 2024,

counsel for the parties held a telephonic conference to discuss several topics, including the potential

location of the arbitration proceeding, and whether the parties would, for convenience, jointly agree

---

[6] Under the Agreement's terms, Plaintiff may initiate arbitration proceedings by engaging in an informal telephonic dispute resolution conference and notifying the other party of their arbitration demand.  (O'Brien Decl., Ex. A at 15-16.)  Shugars has completed both.  (Voelz Decl., ¶¶ 2-3.)

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

1  to waive the geographic limitations on the arbitration location provided for in the Agreement.  (*Id.*,

2  ¶ 4.)  On May 2, 2024, the Parties exchanged email communications discussing the arbitrator

3  selection process and potential locations, and as recently as May 14, 2024, Walmart proposed

4  potential arbitrators.  (*Id.*, ¶ 5.)

5     On February 29, 2024, despite the Agreement and the ongoing individual arbitration

6  brought by Shugars, Plaintiffs sued Walmart in the Superior Court of California, County of Santa

7  Clara, alleging seven causes of action that are nearly identical to those raised in Shugars' arbitration

8  demand.  ((*See* Dkt. #1, ¶ 1); (*Compare* (Dkt. #1, Ex. C, ¶ 2) *with* (Voelz Decl., Ex. A at 2)).)

9  Shugars brings her claims here in two capacities—first, pursuant to PAGA, and second, as a

10  putative class representative.  (Dkt. #1, Ex. C, ¶ 2; Prayer for Relief, ¶ c.)  Le'Roy brings her claims

11  "on behalf of herself" and, as a putative class representative.  (*Id.*, Ex. C, ¶ 2.)  Together, Plaintiffs

12  allege Walmart (1) willfully misclassified them and "similarly situated" individuals as independent

13  contractors (Claim 6); (2) failed to reimburse necessary business expenses (Claim 2); (3) failed to

14  pay minimum wages (Claim 3); (4) failed to pay overtime wages (Claim 4); and (5) failed to issue

15  itemized wage statements (Claim 5).  (*See id.*, Ex. C)  For the foregoing claims, Shugars, alone,

16  seeks civil penalties pursuant to PAGA on behalf of herself and other allegedly "aggrieved

17  employees" (Claim 1), while Plaintiffs, together, seek damages on behalf of the putative class.  (*Id.*,

18  Ex. C, ¶¶ 49-51.)  Lastly, Plaintiffs allege Walmart engaged in unfair business practices under

19  California Business and Professions Code (the "UCL") (Claim 7), and seek declaratory and

20  injunctive relief, restitution, and reasonable attorney's fees, costs, and expenses.  (*Id.*, Ex. C, ¶ 60.)

21     On May 8, 2024, Walmart timely removed the action to this Court.  (*See* Dkt. #1.)

22  **IV.** **THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS**

23    **A.** **The Agreement Is Governed By the FAA, Which Favors Arbitration.**

24     The Agreement provides explicitly that it "is governed exclusively by the [FAA]."  (O'Brien

25  Decl., Ex. A at 1.)  The parties' choice of the FAA to govern their Agreement is enforceable

26  according with its terms.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) ("For

27  any arbitration agreement within the coverage of the [FAA], [t]he court is to make th[e]

28

1   [arbitrability] determination by applying the federal substantive law of arbitrability . . . absent clear

2   and unmistakable evidence that the parties agreed to apply non-federal arbitrability law.") (internal

3   quotations and citations omitted); *see also Martinez v. Leslie's Poolmart, Inc.*, No. 8:14-CV-01481-

4   CAS, 2014 WL 5604974, at *3, n.4 (C.D. Cal. Nov. 3, 2014) ("[T]he arbitration agreement

5   expressly provides that it is governed by the FAA . . . .   Accordingly, the Court finds that the FAA

6   applies to the arbitration agreement.").

7       "The FAA embodies a clear federal policy in favor of arbitration[,]" *Simula, Inc. v. Autoliv,*

8   *Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and compels the enforcement of a written arbitration

9   agreement "evidencing a transaction involving commerce."[7]   9 U.S.C. § 2; *see also Am. Express*

10  *Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (The FAA "reflects the overarching principle

11  that arbitration is a matter of contract . . . .   And consistent with [its] text, courts must 'rigorously

12  enforce' arbitration agreements according to their terms.") (internal citation omitted).   Thus, once

13  the mere existence of an arbitration agreement is established—as it has been here—the party

14  "resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

15  arbitration."   *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1000 (N.D. Cal. 2011) (quoting

16  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)); *see also Pinnacle Museum Tower*

17  *Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).

18      **B.      The FAA Does Not Exempt Plaintiffs From Arbitration.**

19      Section 1 of the FAA creates an exemption for seamen, railroad employees, and certain

20  other transportation workers.   *See* 9 U.S.C. § 1 ("[N]othing herein contained shall apply to contracts

21  of employment of seamen, railroad employees, or any other class of workers engaged in foreign or

22  interstate commerce.")   Plaintiffs may attempt to invoke this exemption by alleging that the

---

[7] The term "commerce," as used in section 2 of the FAA, invokes a "full exercise of constitutional power" and "signals an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).   Walmart is a national retailer incorporated in Delaware with its principal place of business based in Bentonville, Arkansas.   (O'Brien Decl. ¶ 2.)   Because Walmart contracted with Plaintiffs, independent contractors based in California, the Agreement involves interstate commerce.   Courts routinely hold that contracts between local individuals and institutions that do business in more than one state involve "commerce" within the meaning of the FAA.   *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (FAA applies to contract between local "sales counselor" and a "national retailer").

"household goods and other products" drivers on the Spark Driver platform deliver are "manufactured out of state and are thus in interstate commerce." (Dkt. #1, Ex. C, ¶ 33.) But the exemption does not apply here. Plaintiffs are not workers "engaged in foreign or interstate commerce" within the meaning of Section 1, and such a finding would conflict with the terms of the Agreement and applicable law.

First, the Agreement provides that Section 1 of the FAA is inapplicable here. Plaintiffs expressly agreed that they were not part of "any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the FAA" and that "[t]he validity, interpretation, and enforcement of this Arbitration Provision [would] be governed by the FAA even if Claimant and/or Walmart are otherwise exempt from the FAA." (O'Brien Decl., Ex. A at 7.) The Agreement must therefore be enforced according to its terms.

Second, just last year, a federal district court in the Central District of California compelled arbitration in a putative class action that involved an arbitration agreement identical to the parties' Agreement here and dismissed the case. *See Shelton v. Delivery Drivers, Inc.*, No. 8:22-cv-02135-DOC, 2023 WL 2629027 (C.D. Cal. Jan. 31, 2023). In deciding to compel arbitration and dismiss the case, the *Shelton* court examined the relevant facts and found that the exemption did not apply, and ordered that the plaintiff's individual claims against Walmart be arbitrated. *Id.* at *3.

Likewise, earlier this year another federal district court in the Ninth Circuit compelled arbitration of a plaintiff's putative class claims under the same Agreement. There, as here, the plaintiff performed delivery services on the Spark Driver platform, filed suit against Walmart alleging various wage-and-hour violations, and pled facts alleging he was an exempt transportation worker. *See* Complaint at ¶ 19, *Reed v. Spark Driver*, No. 3:24-cv-00057 (D. Or. Jan. 9, 2024). The court, however, compelled plaintiff's claims to individual arbitration and dismissed the action. *See* Order re: Defendant Walmart Inc.'s Mot. to Compel Arbitration, No. 3:24-cv-00057 (D. Or. Mar. 18, 2024) (plaintiff, a former driver on the Spark Driver platform, opted not to contest Walmart's motion to compel arbitration, but did oppose dismissal of the action, which the court overruled).

1

2

**C.**     **Plaintiffs' Claims All Fall Within the Scope of the Agreement.**

1.     **Plaintiffs' Individual Claims Are Arbitrable.**

3

4

5

6

7

8

9

10

11

12

13

14

15

While the Court should not reach the issue of which claims are subject to arbitration (as explained in Section IV.C.3 below), all of Plaintiffs' individual claims fall within the scope of the Agreement.  The FAA embodies a clear policy "in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 323 (1983) ("[D]oubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration."); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (if the court determines that "a valid agreement to arbitrate exists" and that "the agreement encompasses the dispute at issue," the court must "enforce the arbitration agreement in accordance with its terms").  The broader the arbitration clause, the stronger the presumption in favor of arbitration.  *AT&T Techs., Inc., v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Here, the scope of the Agreement both is broad and specifically encompasses Plaintiffs' claims.

16

17

a.     ***Plaintiffs' Argument That They Were Misclassified As Independent Contractors Is Arbitrable.***

18

19

20

21

22

23

24

25

26

27

The crux of this action is Plaintiffs' argument that Walmart misclassified them as independent contractors.  (*See* Dkt. #1, Ex. C, ¶ 27 ("Walmart classifies Spark Drivers, including Plaintiffs Shugars and Le'Roy, as 'independent contractors,' but under California law they should be classified as employees.").)  Indeed, all of Plaintiffs' claims are based on their underlying misclassification theory.  (*See* Dkt. #1, Ex. C, ¶ 2 ("Walmart has misclassified its Spark Drivers, including Plaintiffs Crystal Shugars and Niccol [sic] Le'Roy.  Because of the Spark Drivers' misclassification as independent contractors, Walmart has violated multiple provisions of the California Labor Code . . . .").)  The Agreement explicitly covers such claims, stating that the arbitration provision "shall apply to any and all disputes between the Parties . . . including but not limited to . . . **disputes arising out of or related to Contractor's classification as an independent**

28

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

1  **contractor**."   (O'Brien Decl., Ex. A at 11 (emphasis added).)   As such, and consistent with

2  Shugars' decision to pursue the same underlying theory against Walmart in individual arbitration,

3  all of Plaintiffs' individual claims are subject to the arbitration provision.

b.   ***Plaintiffs' Wage Claims Are Arbitrable.***

5  Moreover, Plaintiffs' specific wage-and-hour claims against Walmart—alleging that their

6  provision of services using the Spark Driver platform violated various sections of the California

7  Labor Code (*see* Dkt. #1, Ex. C at ¶ 2.)—are likewise addressed by the Agreement.   The Agreement

8  states that the "[a]rbitration [p]rovision . . . applies, without limitation, to disputes regarding **any**

9  **. . . state . . . wage-and-hour law, employment law . . . compensation [law], . . . expense**

10  **reimbursement [law]**. . . . and all other federal, state, or local statutory and legal claims . . . arising

11  out of or relating to Contractor's relationship with Walmart . . . ."   (O'Brien Decl., Ex. A at 12

12  (emphasis added).)   Thus, the plain language of the Agreement requires this Court to compel

13  Plaintiffs' individual wage claims to arbitration, as Shugars already acknowledged when she

14  brought the same claims in arbitration.

c.   ***Plaintiffs' Unfair Competition Claim Is Arbitrable.***

16  Plaintiffs also bring a claim under the UCL, alleging that Walmart engaged in unfair

17  business practices by "continu[ing] to classify Spark Drivers as independent contractors during the

18  relevant time period . . . ."   (Dkt. #1, Ex. A at ¶ 58.)   Plaintiffs seek declaratory and injunctive

19  relief.[8]   (*Id.*)

20  As with the wage claims, Plaintiffs' UCL claim is similarly addressed by the Agreement,

21  as it covers "any and all disputes between the Parties," including disputes regarding "unfair

---

[8] Plaintiffs mischaracterize this remedy as "[p]ublic injunctive relief" in their statement of relief. (Dkt. #1, Ex. C, Prayer for Relief, ¶ g.)  But calling it public injunctive relief does not make it so. *See Ajzenman v. Off. of Comm'r of Baseball*, No. CV-203643-DSF(JEMX), 2020 WL 6037140, at *6 (C.D. Cal. Sept. 14, 2020) ("Courts do not take relief styled as a 'public injunction' at face value.").  Nor does framing the relief requested in a "vague, generalized allegation" that merely seeks "nothing more than is already required by law," *id.* at *6-7, such as Plaintiffs' request that Walmart be "require[ed] . . . to comply with the California Labor Code." (Dkt. #1, Ex. C, Prayer for Relief, ¶ g.); *see also Ajzenman*, 2020 WL 6037140 at *6-7 ("Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief.").  As such, this request for ***private, individualized*** injunctive relief is arbitrable under the Agreement.

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

1    competition and compensation." (O'Brien Decl., Ex. A at 11-12.)  Thus, the plain language of the

2    Agreement requires the Court to compel Plaintiffs' UCL claim to arbitration.

3                    2.    **Plaintiffs Must Arbitrate Their Claims on an Individual Basis.**

4           In addition to agreeing to arbitrate their claims, Plaintiffs agreed that they would arbitrate

5    only their own claims and not the claims of others in a class action.  Indeed, the first page of the

6    Agreement states in capitalized, bold-face, and underlined type that its arbitration provision

7    "**REQUIRES THE PARTIES TO RESOLVE ALL DISPUTES ON AN INDIVIDUAL**

8    **BASIS** . . . ." (O'Brien Decl., Ex. A at 1 (emphasis in original).)  More precisely, the Agreement

9    provides, "[a]ny dispute between the Parties shall be brought in arbitration on an individual basis

10   only, and not on a class, collective, mass, or representative basis, or in any other manner that

11   sacrifices the principal advantages of individual arbitration." (*Id.*, Ex. A at 14.)  Plaintiffs

12   separately agreed in the TOU that they would bring any claims against Walmart on an individual

13   basis.  The TOU states in capitalized, bold-face, and underlined type that **ANY DISPUTE**

14   **BETWEEN YOU AND WALMART SHALL BE ADJUDICATED SOLELY ON AN**

15   **INDIVIDUAL BASIS, AND YOU AND WALMART EACH WAIVE THE RIGHT TO**

16   **PARTICIPATE IN A CLASS . . . ACTION WITH RESPECT TO SUCH DISPUTE.** (*Id.*, Ex.

17   E at 4.)  Accordingly, both the TOU and the Agreement each independently require that Plaintiffs'

18   class and individual PAGA claims be compelled to individual arbitration.

19                    a.    ***Plaintiffs Agreed to Arbitrate Their Claims and Not Participate in***
                            ***Any Putative Class Action.***
20

21          The Agreement states that "[t]he Parties expressly waive the right to have any dispute or

22   claim brought, heard, administered, resolved, or arbitrated as a class, collective, or mass action, and

23   neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or

24   administer any class, collective, and/or mass action, or to award relief to anyone but the individual

25   in arbitration ('Class Action Waiver')." (O'Brien Decl., Ex. A at 4.)  Accordingly, this Court

26   should enforce the Agreement's class action waiver and compel Plaintiffs' putative class claims to

27   individual arbitration.  Not only would that action be consistent with the parties' agreement, but it

28   would be consistent with Shugars' assessment of the Agreement, as she is already pursuing these

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO. 5:24-CV-02765-NC)

1    claims on an individual basis in arbitration.

2         b.    ***Shugars Agreed to Arbitrate Any Individual PAGA Claims.***

3         Likewise, as one District Court has already held, the Agreement requires Shugars to

4    arbitrate her individual PAGA claims.  In *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 660-

5    62 (2022), the United States Supreme Court held that the FAA preempts the earlier rule

6    promulgated in *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014), which

7    prohibited employees from agreeing to arbitrate PAGA claims on an individual basis.  The Supreme

8    Court held that, under the FAA, PAGA claims, previously treated solely as representative claims

9    not susceptible to arbitration, can be bifurcated into individual and representative parts.  *Viking*

10   *River*, 596 U.S. at 660-62; *see also Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1119 (2023)

11   ("*Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims

12   if the agreement is covered by the FAA.").  Although *representative* PAGA claims cannot be

13   arbitrated, given the language of the Agreement here, *individual* PAGA claims must be arbitrated

14   without joining the PAGA claims of others in the arbitral proceeding.  *Shelton*, 2023 WL 2629027,

15   at *3 (citing *Viking* in holding that "[b]ecause Plaintiff's individual PAGA claim here is properly

16   subject to arbitration, the court compels arbitration of Plaintiff's claims . . . ."); *Viking River*, 596

17   U.S. at 660-62; *Adolph*, 14 Cal. 5th at 1118-19 (acknowledging the Supreme Court's holding in

18   *Viking River* that a plaintiff's PAGA claim can be bifurcated into individual and representative

19   claims, and the former sent to individual arbitration).

20        Accordingly, Shugars must arbitrate the PAGA claims she asserts in her "individual"

21   capacity, as an "aggrieved employee[]" (*See* Dkt. #1, Ex. C), but not the representative PAGA

22   claims she asserts on behalf of other employees.  *Viking River*, 596 U.S. at 658; *Walters v. Luxottica*

23   *of Am. Inc.*, No. 8:23-cv-01099 FWS(MAA), 2024 WL 661195, at *11 (C.D. Cal. Jan. 5, 2024)

24   (compelling individual PAGA claim to arbitration when waiver language states: "a claim you bring

25   on your own behalf as an aggrieved employee for recovery of underpaid wages (as opposed to a

26   representative claim for civil penalties) is arbitrable to the extent permitted by law"); *Vazquez v.*

27   *Tommy Bahama R&R Holdings, Inc.*, No. 3:22-cv-01881-JES(KSC), 2023 WL 8264554, at *7

28

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

(S.D. Cal. Nov. 29, 2023) (compelling individual PAGA claim to arbitration when the parties agreed that the "arbitrator selected by the parties . . . shall have no power under this Agreement to . . . hear a representative or group claim and/or to hear a private attorney general claim").

The fact that the Agreement limits the arbitrator to granting only "individualized relief" does not change this outcome. (O'Brien Decl., Ex. A at 15.) Indeed, when dealing with similar agreement language, the California Court of Appeal has recently compelled individual PAGA claims to arbitration. *See Gregg v. Uber Techs., Inc.*, 89 Cal. App. 5th 786, 800 (2023) (compelling arbitration of an individual PAGA claim, pursuant to *Viking River*, where agreement provided for individual arbitration of claims falling within the agreement's scope) (emphasis added).

Accordingly, this Court should enforce the Agreement and compel Shugars' individual PAGA claims to the ongoing arbitration proceeding.

3.    **Any Question About the Scope of the Agreement to Arbitrate Must Be Decided by an Arbitrator.**

For all of the foregoing reasons, there can be no dispute that Plaintiffs' claims are covered by the Agreement and should be compelled to arbitration. But even if that were not the case, an arbitrator—and not the Court—should resolve any question of the scope of the claims covered. The Agreement includes an explicit delegation clause, which states that "[o]nly an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of [the] Arbitration Provision, including without limitation any dispute concerning arbitrability." (O'Brien Decl., Ex. A at 12.) Where, as here, an arbitration agreement delegates to the arbitrator disputes about arbitrability, including disputes about the existence, scope, or validity of the arbitration agreement, a court must refer the matter to arbitration, irrespective of its views on these issues. As the Supreme Court held unanimously:

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).  "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (finding agreement vested arbitrator with exclusive authority to resolve disputes relating to interpretation, applicability, and enforceability of arbitration agreement); *see also Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 243 (2016) ("'[W]ho decides' [issues of arbitrability] is a matter of party agreement."); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 551, 558 (2004) (noting that who decides arbitrability depends on the parties' contract; compelling arbitration of gateway issues).

### D.    The Agreement Is Valid and Enforceable.

Under the FAA, an arbitration agreement must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the [FAA] was to . . . rigorously enforce agreements to arbitrate. . . ."). To determine whether an arbitration agreement is valid and enforceable, courts "apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Mundi v. Union Sec. Life Insur. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

To establish unconscionability under California law, a plaintiff must prove that the agreement is both procedurally and substantively unconscionable. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc). Here, the Agreement is neither procedurally nor substantively unconscionable, much less both. Indeed, given that Shugars has already agreed to arbitrate under the Agreement, both her knowledge of the Agreement and her continuing willingness to comply with its terms without objection in pursuing her individual claims here demonstrate that it is neither procedurally, nor substantively, unconscionable.

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.    **The Agreement Is Not Procedurally Unconscionable.**

Procedural unconscionability focuses on "oppression" or "surprise" resulting from unequal bargaining power.  *Kilgore*, 718 F.3d at 1059.  Neither is present here.

The Agreement is procedurally sound because Plaintiffs could opt-out of it.  As the *Shelton* court recognized, the Agreement provides Plaintiffs "an opportunity to opt out of the arbitration provision without compromising her ability to use the platform," and as such, lacks the procedural unconscionability necessary to find an agreement unconscionable under California law.  *Shelton*, 2023 WL 2629027, at *3; *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it . . . ."); *Flora v. Prisma Labs, Inc.*, No. 23-cv-00680-CRB, 2023 WL 5061955, *3 (N.D. Cal. Aug. 8, 2023) (recognizing that "where there is a meaningful opportunity to opt out of an arbitration agreement, that agreement is not adhesive"); *Blair v. Superpedestrian HQ*, No. 2:23-cv-02153-MCS-AGR, 2023 U.S. Dist. LEXIS 80426, at *15 (C.D. Cal. May 8, 2023) (finding an agreement that provided the plaintiff an opportunity to opt out and included instructions for doing so was not procedurally unconscionable).  Indeed, agreeing to arbitration is not a required condition for using the Spark Driver platform and providing services under its terms of use.  The Agreement provides that the "[a]rbitration [p]rovision is not a mandatory component of [the] Agreement or Contractor's contractual relationship with Walmart.  If [the] Contractor does not want to be subject to this [a]rbitration [p]rovision, **[the] Contractor may opt out . . . .**"  (O'Brien Decl., Ex. A at 20 (emphasis added).)  Plaintiffs were presented with an opportunity to opt out and were provided with a clear procedure for doing so—"by notifying Walmart in writing of [their] desire to opt out of [the arbitration provision] . . . within 30 days of [their] execution of [the] Agreement . . . ." (*Id.*)  They chose not to do so.  (*See id.*)

Moreover, the clear headings contained in the Agreement do not support a procedural unconscionability argument.  *See Kilgore*, 718 F.3d at 1059 (arbitration provision not procedurally unconscionable because "the arbitration clause [was not] buried in fine print . . . but was instead in its own section, clearly labeled, in boldface"); *Flora*, 2023 WL 5061955, at *3 (finding an

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)

arbitration agreement's use of "legible font," a "bolded and clearly labeled 'Dispute Resolution; Binding Arbitration'" section, and a "bold statement" instructing users to "read the [arbitration] section carefully" did not support a finding of procedural unconscionability).  Here, both the arbitration provision and the right to opt out appear in bolded lettering, in separately delineated sections, and explain the operative terms of arbitration and the opportunity to opt out.  (O'Brien Decl., Ex. A at 7, 20.)  In fact, on the first page of the Agreement, Plaintiffs were advised in large, bolded font to "**Please review this Agreement carefully**" as the Agreement included an "**Arbitration Provision in Section II below**."  (*Id.*, Ex. A at 1 (emphasis in original).)

Finally, the Agreement advised Plaintiffs that they were "free to seek assistance or advice from an advisor . . . before entering into the Agreement . . . ."  (*Id.*)  When signing the Agreement, Plaintiffs also acknowledged that they "**read, understood, and considered the consequences of the Agreement**."  (*Id.*, Ex. A at 23 (emphasis in original).)  The Agreement is thus not procedurally unconscionable, negating any unconscionability defense.

### 2.   The Agreement Is Not Substantively Unconscionable.

Even if Plaintiffs could show procedural unconscionability (they cannot), they must also show that the Agreement is substantively unconscionable.  *See Circuit City Stores*, 283 F.3d at 1200 (refusing to reach substantive unconscionability argument once procedural unconscionability argument failed); *see also Kaplan v. Athletic Media Co.*, No. 23-cv-00229-JST, 2023 WL 8587981, at *6 (N.D. Cal. Dec. 8, 2023) (finding the court need not address substantive unconscionability after a finding that the contested agreement was not procedurally unconscionable); *Amirani v. Arthur J. Gallagher Serv. Co., LLC*, No. 8:20-cv-01526-MCS (DFMx), 2020 U.S. Dist. LEXIS 250014, at *11 (C.D. Cal. Dec. 28, 2020) (following *Ahmed* by declining to analyze substantive unconscionability).  Substantive unconscionability concerns "overly harsh" or "one-sided[]" terms. *Kilgore*, 718 F.3d at 1058.

The Agreement is not substantively unconscionable.  It provides both sides with the same benefit of faster, more cost-effective resolutions of any disputes between them.  (*See generally* O'Brien Decl., Ex. A.)  Thus, there are no "one-sided" arbitration provisions in the Agreement.  It

also imposes no undue hardship on Plaintiffs.  There are no limitations of remedies or damages, nor any one-sided limitations.  *See Blair*, 2023 U.S. Dist. LEXIS 80426, at \*16 (finding no unconscionability where a "disputed arbitration agreement binds both Plaintiff and Defendant and does not include any restrictions that would unfairly favor one side").  Plaintiffs may recover any remedies they could individually recover in a court of law, including attorneys' fees and costs, if the law so allows.  (*See* O'Brien Decl., Ex. A.)  And even if the Agreement had some amount of substantive unconscionability (it does not), it does not have the high degree of substantive unconscionability required to decline enforcement.  *See Pinnacle Museum Tower Ass'n.*, 55 Cal. 4th at 246 (2012) (to be substantively unconscionable, a "term must be 'so one-sided as to shock the conscience.'"); *Mohamed*, 848 F.3d at 1210 (recognizing the definition of substantive unconscionability defined in *Pinnacle Museum Tower Ass'n*).

## V.  SHUGARS' REPRESENTATIVE PAGA CLAIM SHOULD BE STAYED PENDING COMPLETION OF THE ARBITRATION.

The FAA, federal precedent, and the Agreement require Shugars' representative PAGA claims be stayed.  As an initial matter, the FAA mandates that Shugars' representative PAGA claims be stayed pending arbitration.  *See* 9 U.S.C. § 3 (in "any suit or proceeding . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had").  Because Shugars agreed to arbitrate the gateway issues of arbitrability, as well as the merits of her claims, this matter falls within the scope of the FAA's mandatory stay provision.  *Id.*; *see also Grear v. Comcast Corp.*, No. C-14-05333, 2015 WL 926576, at \*2 (N.D. Cal. Mar. 3, 2015) (staying litigation under 9 U.S.C. § 3 when referring dispute to arbitration); *Longboy v. Pinncale Prop. Mgmt. Serv., LLC*, No. 23-cv-01248-AMO, 2024 WL 815550 at \*12 (N.D. Cal. Feb. 23, 2024) (staying the plaintiff's non-individual PAGA claims pending individual arbitration pursuant to 9 U.S.C. § 3).

A stay is also consistent with the holdings in *Viking River* and *Adolph*.  *See Adolph*, 14 Cal. 5th at 1123-24 (finding it appropriate, and consistent with *Viking River*'s holding, for a court to exercise its discretion to stay a plaintiff's non-individual representative PAGA claims pending

arbitration of his individual PAGA claims).  Moreover, courts within the Northern District of California have recognized arbitration agreements with stay provisions, and in those instances, have stayed plaintiffs' representative claims pending completion of their individual arbitrations.[9]  *See Nicholas v. Uber Techs.*, *Inc.*, No. 19-cv-08228-PJH, 2020 WL 4039382, at *9 (N.D. Cal. July 17, 2020) (deciding to stay the plaintiff's representative PAGA claims because the parties agreed, via their arbitration provision, that "any representative claim that is permitted to proceed in a civil court of competent jurisdiction must be stayed pending the arbitration of [the plaintiff's individual] dispute . . . .").  Thus, Shugars' representative PAGA claim must be stayed pending the outcome of her arbitration.

## VI.    **CONCLUSION**

For these reasons, Walmart respectfully requests that this Court grant its motion to compel Plaintiffs' putative class claims and Shugars' individual PAGA claim to individual arbitration, and dismiss, or in alternative stay, Plaintiffs' putative class claims.  Shugars' representative PAGA claims should be stayed pending the completion of Plaintiffs' individual arbitration.

Dated:  May 15, 2024

SCOTT VOELZ
PAUL A. HOLTON
ALLISON BADER
JAMIE BUTTS
O'MELVENY & MYERS LLP

By:    */s/ Scott Voelz*
Scott Voelz
Attorney for Defendant Walmart Inc.

---

[9] The Agreement expressly provides that "any representative claim that is permitted to proceed in a civil court . . . must be stayed pending arbitration of [the] [c]ontractor's dispute" of claims deemed arbitrable.  (O'Brien Decl., Ex. A at 15.)

DEFENDANT WALMART INC.'S MOTION
TO COMPEL ARBITRATION
(CASE NO.  5:24-CV-02765-NC)