UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL SHUGARS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WALMART INC.,<br><br>　　　　Defendant. | Case No. 24-cv-02765-EKL<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND MOTION TO STAY**<br><br>Re: Dkt. No. 7 |

Plaintiffs Niccol Le'Roy and Crystal Shugars, two Walmart "Spark Drivers," allege that Defendant Walmart Inc. ("Walmart") willfully misclassified them as independent contractors. Plaintiffs assert violations of the California Labor Code and the California Unfair Competition Law. Walmart moves to compel arbitration of all claims except for Shugars' representative Private Attorneys General Act ("PAGA") claim, which Walmart requests to stay pending arbitration. The Court carefully reviewed the parties' briefs and heard oral argument on November 6, 2024. For the following reasons, the Court GRANTS the motion to compel arbitration and STAYS the action while arbitration is pending.

I.　**BACKGROUND**[1]

Walmart is a national retailer known for offering "Everyday Low Prices on a huge assortment of groceries and more." Compl. ¶ 17. Walmart also owns and operates the Spark Driver delivery platform. *Id*. ¶ 1. "The Spark Driver platform allows Walmart customers the ability to order groceries and other goods from local Walmart stores through Walmart's site or app." *Id*. ¶ 10. "The Spark Driver app allows anyone with a car and a smartphone to shop for and

---

[1] The facts are taken from the complaint, ECF No. 1 Ex. C ("Compl."), and assumed to be true for purposes of this motion.

deliver groceries and goods to Walmart customers." *Id*. ¶ 9.  "Spark Drivers, including Plaintiffs, fulfill same-day delivery orders customers place with Walmart.  The drivers either fulfill the order (shop) at Walmart or pick up a prepared order curbside or in-store and then deliver the order to the customer." *Id*. ¶ 16.

Plaintiffs Le'Roy and Shugars both work as Spark Drivers in the state of California. *Id*. ¶¶ 3-4.  They allege that Walmart willfully misclassified them and other Spark Drivers as independent contractors and failed to pay them full compensation in violation of various provisions of the California Labor Code and the Unfair Competition Law. *Id.* ¶ 2 (citing Cal. Lab. Code §§ 226.8, 510, 1194, 1197, 1198, 2802, and Cal. Bus. & Prof. Code § 17200).  Shugars asserts a PAGA claim, Cal. Lab. Code § 2699 *et seq.*, based on the Labor Code violations. *Id*. ¶¶ 2, 46-48.  Le'Roy seeks to represent a class of Spark Drivers who have worked for Walmart in California. *Id*. ¶¶ 37-45.

Le'Roy and Shugars each signed a Non-Disclosure and Dispute Resolution Agreement with Walmart that includes an arbitration provision.  O'Brien Decl. Ex. A, ECF No. 7-2 (the "Agreement").  The introductory paragraph to the Agreement indicates that Spark Drivers agree to arbitrate claims against Walmart unless they opt out of the arbitration provision:

> **IMPORTANT: Please review this Agreement carefully**.  This Agreement is a binding contract that addresses important legal issues.  Entering into the Agreement, including the **Arbitration Provision in Section II below**, will affect your legal rights.  It is your sole responsibility to read and understand this Agreement and its **Arbitration Provision, WHICH REQUIRES THE PARTIES TO RESOLVE ALL DISPUTES ON AN INDIVIDUAL BASIS IN FINAL AND BINDING ARBITRATION TO THE FULLEST EXTENT PERMITTED BY LAW, UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED IN THE ARBITRATION PROVISION.**

Agreement at 1 (emphasis in original).

The arbitration provision requires that all disputes between the parties shall be resolved "on an individual basis and only by an arbitrator through final and binding arbitration and not by way of a court or jury trial, nor a proceeding before any other governmental body, and not by way of a class, collective, mass, or representative action or proceeding." Agreement § II.1.A.  The arbitration provision also contains the following opt-out clause:

2

> This Arbitration Provision is not a mandatory component of this Agreement or Contractor's contractual relationship with Walmart. If Contractor does not want to be subject to this Arbitration Provision, Contractor may opt out by notifying Walmart in writing of Contractor's desire to opt out of this Provision. To be effective, the writing indicating Contractor's intent to opt out must be dated, signed, and submitted to Walmart within 30 days of Contractor's execution of this Agreement, by U.S. Mail to the Attention of the Legal Department, Walmart Inc., 702 Southwest 8th Street, Bentonville, Arkansas 72716.

Agreement § II.1.G.

Walmart moves to compel arbitration of all claims on an individual basis, except for Shugars' representative PAGA claim, which it asks the Court to stay pending arbitration. Mot. to Compel Arbitration at 1, ECF No. 7 ("Mot."). Plaintiffs oppose the Motion. Opp., ECF No. 21.

## II.     MOTION TO COMPEL ARBITRATION

### A.      Legal Standard

The Federal Arbitration Act ("FAA") governs the enforcement of written arbitration agreements implicating interstate commerce. 9 U.S.C. § 1 *et seq.*; *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that the FAA extends to employment contracts, except for "contracts of employment of transportation workers"). In deciding whether to compel arbitration, a court must determine: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

### B.      Discussion

In this case, the parties do not dispute the two threshold issues of the existence of an arbitration agreement and its scope. Plaintiffs acknowledge that they signed the Agreement, which contains an arbitration provision. Opp. at 6, 14, 17 (acknowledging that all Spark Drivers sign an arbitration agreement); *see also* Le'Roy Decl. ¶ 4, ECF No. 21-2. Plaintiffs do not dispute that the arbitration provision covers all claims asserted in this action, except for Shugars' representative PAGA claim – which Walmart also acknowledges. Mot. at 13 (recognizing that the representative PAGA claim "cannot be arbitrated, given the language of the Agreement here").

1    Instead, Plaintiffs contend that Walmart may not enforce the arbitration provision for two

2    primary reasons. First, Plaintiffs argue that the arbitration provision is exempt from the FAA

3    because Plaintiffs are transportation workers engaged in foreign or interstate commerce. Second,

4    Plaintiffs argue that the arbitration provision is procedurally and substantively unconscionable

5    under California law. The Court addresses these arguments in turn.

### 1.   The transportation worker exemption does not apply.

Plaintiffs argue that Walmart cannot compel arbitration because Spark Drivers are "transportation workers" engaged in foreign or interstate commerce, and thus the arbitration provision is exempt from the FAA.[2] 9 U.S.C. § 1 (exempting from the FAA's scope "any contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"). "As the party opposing arbitration, plaintiffs bear the burden of establishing that the exemption applies." *Fli-lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024).[3]

The Court employs a two-step analysis to determine whether Spark Drivers are a class of workers engaged in foreign or interstate commerce. At the first step, the Court "defin[es] the relevant 'class of workers' to which" Spark Drivers belong. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). In defining the class of workers, the Court focuses on "the actual work that the members of the class, as a whole, typically carry out," not on what the employer "does generally." *Id.* at 456. At the second step, the Court "determine[s] whether that class of workers is 'engaged in foreign or interstate commerce.'" *Id.* A class of workers is engaged in foreign or interstate commerce if the workers play a "direct and necessary role in the free flow of goods across borders." *Id.* at 458. In other words, the workers must be "actively 'engaged in transportation' of

---

[2] Because Walmart may compel arbitration under the FAA, Walmart need not invoke the California Arbitration Act (the "CAA"). Accordingly, the Court does not reach Plaintiffs' argument that Walmart cannot compel arbitration under the CAA.

[3] Walmart argues that "Section 1 of the FAA is inapplicable" because "Plaintiffs expressly agreed" that they were not transportation workers within the meaning of Section 1 of the FAA. Mot. at 9. The Court rejects this argument because the FAA's Section 1 exemption for transportation workers "cannot be waived by private contract." *Romero v. Watkins & Shepard Trucking*, 9 F.4th 1097, 1098 (9th Cir. 2021); *see also id.* at 1100-01.

those goods across borders via the channels of foreign or interstate commerce." *Id.*; *see also Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1159-60 (9th Cir. 2024) ("[A]n employee's relationship to the movement of goods must be sufficiently close enough to conclude that his work plays a tangible and meaningful role in their progress through the channels of interstate commerce.").

Here, Spark Drivers are not a class of workers engaged in foreign or interstate commerce. At the first step of the analysis, the Court concludes that Spark Drivers belong to a class of workers that perform personal shopping and courier services for Walmart customers. As Plaintiffs allege, "Spark Drivers, including Plaintiffs, fulfill same-day delivery orders customers place with Walmart." Compl. ¶ 16. Spark Drivers "either fulfill the order (shop) at Walmart or pick up a prepared order curbside or in-store and then deliver the order to the customer." *Id*. At the second step of the analysis, the Court concludes that Spark Drivers are not engaged in foreign or interstate commerce. Spark Drivers fulfill same-day or next-day deliveries of groceries and other goods selected from a local Walmart store's inventory. *Id*. ¶ 10. Thus, Spark Drivers are engaged in purely local transactions between a particular retail store and nearby customers. *Id*. ¶ 1. These transactions involve goods that are not in the free flow of interstate commerce because they are in the local store's inventory. *Id*. ¶ 16 (Spark Drivers either "fulfill the order (shop) at Walmart or pick up a prepared order curbside or in-store"); *see also id*. ¶¶ 9, 17. Accordingly, Spark Drivers' work does not play a "direct and necessary role in the free flow of goods across borders." *Saxon*, 596 U.S. at 458.

Indeed, several courts have reached the same conclusion that Spark Drivers are not transportation workers engaged in foreign or interstate commerce. *Walz v. Walmart Inc.*, No. 23-cv-06083-BHS, 2024 WL 2864230, at *4 (W.D. Wash. June 6, 2024) (holding that FAA Section 1 exemption does not apply because Walmart customers place orders "from their local Walmart stores" and Spark Drivers "pick up those products and deliver them to the customers' residences"); *Shelton v. Delivery Drivers, Inc.*, No. 22-cv-02135-DOC, 2023 WL 2629027, at *3 (C.D. Cal. Jan. 31, 2023) (holding that FAA Section 1 exemption does not apply because "Spark drivers transport local merchandise to local customers"); *see also* Order at 6-7, *Medeiros v.*

*Walmart Inc.*, No. 24-cv-12114-FDS (D. Mass. Feb. 25, 2025), ECF No. 32 ("Spark [D]rivers are, by design and in practice, providing a local service."). The Court finds these opinions persuasive.[4]

Plaintiffs contend that Spark Drivers are engaged in interstate commerce because the products in a local Walmart store's inventory "have been shipped from all over the country (and world)," and Spark Drivers transport them "on the last leg of the journey to customers' homes and businesses." Opp. at 10 (citing *Rittmann v. Amazon.com, Inc*, 971 F.3d 904, 915 (9th Cir. 2020)). Plaintiffs' argument fails to recognize two important factors that distinguish their case from *Rittmann* and others they cite. First, the goods here are not in a "continuous" flow of interstate commerce, as they were in the other cases. *See, e.g.*, *Rittmann*, 971 F.3d at 916. Second, any "interstate transactions" involving the goods have already concluded by the time Spark Drivers pick up the goods from a local Walmart store and deliver them to a nearby customer. *See id*.

For example, in *Rittmann v. Amazon.com, Inc*., Amazon Flex delivery drivers were found to be engaged in interstate commerce because they "pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination." 971 F.3d at 915. But unlike the Walmart goods at issue here, for Flex drivers, the "Amazon packages . . . remain in the stream of interstate commerce until they are delivered." *Id*. In *Carmona v. Domino's Pizza, LLC*, drivers that transport pizza ingredients from a supply chain center to pizza franchisees were found to be engaged in interstate commerce because the goods they transport are "inevitably destined from the outset of" their journey to customers located across state lines. 73 F.4th 1135, 1138 (9th Cir. 2023). By contrast, here, Spark Drivers transport goods that are destined for "local buyers." *Id*. Finally, in *Ortiz*, warehouse workers were found to be engaged in interstate commerce because "the relevant goods were still moving in interstate commerce when the employee interacted with them, and each

---

[4] Similarly, courts have found that other classes of workers that perform local delivery services are not engaged in interstate commerce. *Chambers v. Maplebear, Inc.*, 746 F. Supp. 3d 206, 212-15 (S.D.N.Y. 2024) (holding that Instacart grocery delivery drivers are not transportation workers engaged in interstate commerce); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 799, 802 (7th Cir. 2020) (holding that Grubhub food delivery drivers are not transportation workers engaged in interstate commerce); *see also Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL 6605659, at *7 (N.D. Cal. Dec. 17, 2018) (similar); *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1152-53 (N.D. Cal. 2015) (similar).

1  employee played a necessary part in facilitating their continued movement." *Ortiz*, 95 F.4th at
2  1157-58, 1161-62. But here, Spark Drivers transport groceries and goods that are not moving in
3  interstate commerce because they have already reached their destination – a retail store's
4  inventory.
5        Thus, although Plaintiffs attempt to analogize their case to *Rittmann*, their analysis does
6  not meet the relevant issue, *i.e.*, the workers' "relationship to the movement of goods" in interstate
7  commerce, *not* whether the goods at some point traveled across state lines. *Ortiz*, 95 F.4th at
8  1160. Here, there is not a "sufficiently close" relationship between the Spark Drivers' work and
9  the movement of goods in interstate commerce because Spark Drivers fulfill purely local
10 transactions that occur only after the goods have concluded their journey through interstate
11 commerce. *See id*.
12       In sum, the Court concludes that Walmart may compel arbitration because the Agreements
13 between Walmart and Spark Drivers is not exempt from the FAA.
14       Citing to the Second Circuit's decision in *Aleksanian v. Uber Technologies*, No. 22-98,
15 2023 WL 7537627 (2d Cir. Nov. 14, 2023), Plaintiffs urge the Court to limit its analysis to the
16 allegations in the complaint, and if the allegations in the complaint "do not support a
17 determination one way or the other," to permit factual discovery. Opp. at 16. At Plaintiffs'
18 request, the Court has focused its analysis above on the allegations in the complaint, which the
19 Court has assumed to be true for purposes of this motion. *See id.* ("The Court should not look
20 beyond those allegations in deciding a motion to compel arbitration before discovery has taken
21 place."). The Court has not considered Walmart's declarations submitted in support of the
22 Motion.[5] The Court agrees that the Motion can be decided based on the allegations alone because
23 the complaint clearly establishes that Plaintiffs, and Spark Drivers as a class, are not engaged in
24 interstate commerce. *See, e.g.*, Compl. ¶¶ 1, 9-10, 16.

---

[5] For completeness, the Court notes that it would reach the same conclusion if it had considered Walmart's declarations. Indeed, the facts in Walmart's declarations are consistent with the allegations in the complaint. *See* Cardenas Decl. ¶ 6, ECF No. 7-7 ("All items purchased by a customer for delivery by Plaintiffs came from a specific local store's inventory."); *see also id.* ¶ 8 ("[Walmart's] trip records reflect that all orders accepted by Plaintiffs originated from local store locations and were delivered to surrounding areas, with none crossing state lines.").

7

Turning to the request for discovery, Plaintiffs argue that "to the extent it is not clear on the face of the Complaint that Plaintiffs are exempt from the FAA, discovery must be permitted in order to obtain information regarding the extent of the class of workers' involvement in interstate commerce." Opp. at 2. Plaintiffs request discovery on the following issues, which all relate to the nature of Walmart's business generally:

> Walmart's interstate transportation network; the percentage of goods that are manufactured or produced outside of California before being delivered to California customers; the manner in which Defendant determines where and how to ship its products to specific geographic locations; and the proportion of Defendant's products that are delivered to customer's homes as opposed to purchased in-person at brick-and-mortar stores.

Opp. at 2 n.1.

Plaintiffs' requested discovery into general aspects of Walmart's business is not material to the relevant issue here, which is the relationship between Spark Drivers' work and the movement of goods in interstate commerce. If discovery established that Walmart has a substantial interstate transportation network, or that many of the goods sold in retail stores originate from outside of California, it would not change the purely local role that Spark Drivers play as couriers between a specific Walmart retail store and a nearby customer. The Supreme Court has held consistently that the focus of the FAA Section 1 inquiry turns on the nature of the workers' specific role, not on the nature of the employer's business generally. *Saxon*, 596 U.S. at 456, 458-60 (focusing on what the worker "does at Southwest, not what Southwest does generally"); *Bissonnette v. Lepage Bakeries Park St., LLC*, 601 U.S. 246, 253-54 (2024). Moreover, the Supreme Court has instructed against granting discovery "to explore the internal structure and revenue models of a company before deciding a simple motion to compel arbitration," noting that this would undermine the purpose of the FAA. *Id.* at 254. Accordingly, because the FAA Section 1 analysis can be decided based on the allegations in the complaint, and because Plaintiffs do not identify discovery that would be material to the analysis, the Court denies Plaintiffs' request for discovery. The Court finds that Walmart may compel arbitration under the FAA because Spark Drivers are not a class of workers engaged in foreign or interstate commerce.

**2.     The arbitration agreement is not unconscionable.**

Plaintiffs contend that Walmart may not enforce the arbitration agreement because it is unconscionable under California law.  "Both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable[.]" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016).  However, these two elements need not be present in the same degree:  "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012).

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle*, 55 Cal. 4th at 246).  Under California law, "oppression may be established by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." *Id.* (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347-48 (2015)).

Here, Plaintiffs raise three arguments as to procedural unconscionability:  (1) the arbitration provision is a contract of adhesion because "each Spark Driver had to agree to the arbitration provision as a condition" of employment, Opp. at 17; (2) Walmart unilaterally drafted the arbitration provision and possessed "overwhelming bargaining power," *id*. at 18; and (3) there was unfair surprise because the delegation clause was included in the middle of the agreement, *id*.[6]  The Court addresses each below.

---

[6] The delegation clause provides that an arbitrator shall have the "exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation" of the Agreement, except for disputes relating to the class action waiver and representative action waiver.  Agreement § II.1.A.iii.

9

1         First, the Court finds that the arbitration provision is not a contract of adhesion because it was not a mandatory condition of employment, as Spark Drivers had the right and ability to opt out of it. The Agreement states – in large, bold, underlined, and capitalized font at the top of the first page – that Spark Drivers may opt out of the arbitration agreement. Agreement at 1. The opt-out clause is also conspicuously marked in large, bold, and capitalized font. It clearly states that "[t]his Arbitration Provision is not a mandatory component of this Agreement or Contractor's contractual relationship with Walmart." *Id*. § II.1.G. Because Spark Drivers are "given the opportunity to opt-out," the arbitration provision is not a contract of adhesion. *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *cf. Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1087 (9th Cir. 2024) (holding that arbitration agreement was procedurally unconscionable because it was presented "on a take-it-or-leave-it basis, as a part of the job application").

        Plaintiffs argue that the opt-out clause is illusory because Spark Drivers were required to execute the Agreement upfront, and then opt-out by "notifying Walmart in writing of [their] desire to opt out of [the arbitration provision] . . . . within 30 days" of the Spark Driver's execution of the Agreement.[7] *See id*. § II.1.G; Opp. at 16. But the Ninth Circuit consistently holds that similar opt-out procedures preclude a finding that a contract is adhesive. *Mohamed*, 848 F.3d at 1210-11 (holding that arbitration agreement was not procedurally unconscionable where "drivers were required to opt out either in person at Uber's San Francisco offices or by overnight delivery service"); *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc) (upholding arbitration clause that "allows students to reject arbitration within sixty days"); *Ahmed*, 283 F.3d at 1199-1200 (arbitration agreement was not procedurally unconscionable because employee "was given 30 days to decide whether to participate"); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (same); *see also Shelton*, 2023 WL 2629027, at *3 (holding that Walmart's Spark Driver arbitration agreement was not procedurally unconscionable because

---

[7] Plaintiffs argue that "there is no evidence that [the opt-out clause] provided a meaningful choice for drivers." Opp. at 17. But Plaintiffs have not produced any evidence to the contrary, and it is Plaintiffs' burden to prove unconscionability. *Pinnacle*, 55 Cal. 4th at 247.

10

1  "Plaintiff had the choice to opt out of the arbitration provisions without compromising her ability
2  to use the [Spark Driver] platform").

3  Second, the Court finds that Walmart's superior bargaining power does not render the
4  arbitration provision procedurally unconscionable. Although Walmart drafted the agreement,
5  Spark Drivers had a "meaningful choice in deciding whether to agree" to its terms. *OTO, LLC v.*
6  *Kho*, 8 Cal. 5th 111, 125 (2019). Spark Drivers had the option to reject the arbitration provision in
7  its entirety by opting out, as discussed above. Moreover, Plaintiffs have not identified any other
8  indicia of unfair process – for example, that Walmart forced Spark Drivers to accept the arbitration
9  provision without providing an opportunity to review its terms first. *See Chavarria v. Ralphs*
10 *Grocery Co.*, 733 F.3d 916, 922-23 (9th Cir. 2013) (holding that agreement was procedurally
11 unconscionable in part because its terms "were not provided to [the plaintiff] until three weeks
12 after she had agreed to be bound by it").

13 Finally, the Court finds that there was no unfair surprise because Walmart provides Spark
14 Drivers remarkably conspicuous notice of the arbitration provision and its terms. The first
15 paragraph of the Agreement states in large, bold, and capitalized font: "IMPORTANT: Please
16 review this Agreement carefully." Agreement at 1. The introductory paragraph then explains in
17 clear terms, also using bold, underlined, and capitalized font, that the Agreement includes an
18 arbitration provision that requires the parties to resolve disputes through individual arbitration
19 unless the Spark Driver opts out. *Id*. The paragraph also directs Spark Drivers to Section II of the
20 Agreement for full details regarding the arbitration provision. *Id*. Section II, which contains the
21 arbitration, opt-out, and delegation provisions, is also conspicuously labeled with large, bold, and
22 capitalized font. Agreement § 2. Because the arbitration provision is clearly designated, and
23 Spark Drivers are alerted that they should read the provision in its entirety, the Court finds that
24 there was no unfair surprise. *Kilgore*, 718 F.3d at 1059 (holding that arbitration agreement was
25 not procedurally unconscionable because it was not "buried in fine print . . . but was instead in its
26 own section, clearly labeled, in boldface"); *cf. Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001-02
27 (9th Cir. 2021) (holding that arbitration agreement was procedurally unconscionable because it
28 was mandatory and the delegation clause was printed in "single-spaced, 10-point font").

11

1    In sum, Plaintiffs have not met their burden to establish that the arbitration provision, or the delegation clause in particular, is procedurally unconscionable. Because no degree of procedural unconscionability is present, the Court does not reach Plaintiffs' arguments regarding substantive unconscionability. *Mohamed*, 848 F.3d at 1211 ("Because the agreements were not procedurally unconscionable, and because both procedural and substantive unconscionability must be present in order for an agreement to be unenforceable, we need not reach the question whether the agreements here were substantively unconscionable." (citation omitted)); *Ahmed*, 283 F.3d at 1200 ("Because [plaintiff] fails to satisfy even the procedural unconscionability prong, we need not reach his arguments that the agreement is substantively unconscionable.").

Because the arbitration provision is enforceable, the Court GRANTS Walmart's motion to compel arbitration, except with respect to Shugars' representative PAGA claim. All claims subject to arbitration shall proceed to individual arbitration, as required by the arbitration provision and the class action waiver. *See* Agreement § II.1.B.

### III. MOTION TO STAY

#### A. Legal Standard

"Under 9 U.S.C. § 3, a district court must stay proceedings for claims and issues 'referable to arbitration' pending resolution of the arbitration." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 832 (9th Cir. 2019). Additionally, a "district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). In exercising its discretion to grant or deny a stay of non-arbitrable issues, the Court must balance competing interests, including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Id.*; *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."); *Synopsys, Inc. v. Siemens Indus. Software Inc.*,

12

No. 20-cv-04151-WHO, 2021 WL 11679003, at *4 (N.D. Cal. Sept. 9, 2021) ("[I]t is well-established and undisputed that courts have discretion to stay non-arbitrable issues.").

### B. Discussion

The Court must stay this action with respect to all Plaintiffs' claims, except for Shugars' representative PAGA claim, as those claims are "referable to arbitration." *Blair*, 928 F.3d at 832. Walmart acknowledges that Shugars' representative PAGA claim "cannot be arbitrated, given the language of the Agreement here." Mot. at 13; *see also Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1118 (2023) (recognizing that an arbitration agreement cannot require a plaintiff to waive representative PAGA claims). Thus, the Court must decide whether to stay this action in its entirety, or whether to proceed with litigation of Shugars' representative PAGA claim while every other claim is arbitrated.[8]

Here, after balancing the competing interests, the Court concludes that a discretionary stay would conserve judicial and party resources given the substantial overlap between the arbitrable claims and the non-arbitrable representative PAGA claim. "[S]taying the entire action is more judicially efficient because of the possibility of substantially simplifying the issues and the risk of wasting judicial resources if the entire action is not stayed." *Synopsys*, 2021 WL 11679003, at *5. In this case, there is substantial overlap between the issues that must be decided to resolve the arbitrable claims and Shugars' representative PAGA claim. Plaintiffs' Labor Code claims turn on whether Walmart misclassified Spark Drivers as independent contractors, and whether Walmart failed to compensate Spark Drivers as required by law. *See* Compl. ¶¶ 53-58. Shugars' representative PAGA claim challenges precisely the same conduct, alleging that "Walmart

---

[8] Walmart argues that "the FAA mandates that Shugars representative PAGA claims be stayed pending arbitration." Mot. at 18. This is incorrect. Arbitration is mandatory only with respect to issues that are "referable to arbitration." *Blair*, 928 F.3d at 832. Walmart relies on *Grear v. Comcast Corp.* No. C-14-05333, 2015 WL 926576 (N.D. Cal. Mar. 3, 2015). In that case, the court stayed the entire action because the parties disputed the scope of the claims subject to arbitration, and the parties delegated the scope issue to the arbitrator. *Id*. at *2. By contrast, here, Walmart concedes that the representative PAGA claim is not subject to arbitration. Mot. at 13. In the other case Walmart cites, the court ordered a *discretionary* stay of the representative PAGA claims in "the interest of preventing re-litigation of any issues that may overlap with claims subject to arbitration." *Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004, 1022 (N.D. Cal. 2024).

13

1  violated PAGA by willfully misclassifying its Spark Drivers as independent contractors," and that
2  Walmart failed to pay minimum wage, overtime, and compensation for employment-related
3  expenses. *Id*. ¶ 46. Thus, staying the action in its entirety until arbitration concludes will promote
4  orderly and efficient resolution of all issues. A stay will also protect Walmart from the hardship
5  and inequity of being required to proceed with litigation and arbitration on substantially the same
6  issues in two forums, which would be inconsistent with the purposes of the FAA.

   The only factor that might counsel against a stay pending arbitration is the potential harm
to Plaintiffs. On this point, Plaintiffs state that "the representative claims should not be stayed
pending the outcome of the arbitration, given the public policy underlying enforcement of the
Labor Code." Opp. at 1. Plaintiffs fail to elaborate on this point and do not offer legal authority in
support of it. Although the Court recognizes that strong public policy interests underlie PAGA,
the Court finds that a stay at this time is consistent with public policy. *See Adolph*, 14 Cal. 5th at
1123-24. In *Adolph*, the Supreme Court of California held that PAGA claims may be bifurcated
into individual claims subject to arbitration, and representative claims subject to litigation in court.
14 Cal. 5th at 1123. The defendant in that case complained that bifurcation would allow a plaintiff
to relitigate issues in court that had been decided by the arbitrator. *Id*. The court explained that
the relitigation problem can be avoided by staying the representative PAGA claims in the court's
discretion – as Walmart proposes to do here – and after the arbitration concludes, the parties may
ask the court to confirm the arbitrator's award as to the individual PAGA claim so that it is
"binding on the court." *Id*. at 1124. The Court agrees that this approach facilitates orderly
enforcement of the Labor Code and does not undermine any associated public policy.

   In sum, a stay of this action will promote judicial economy and will avoid the hardship and
inefficiency of dual-track litigation and arbitration of overlapping issues. Although Plaintiffs fail
to articulate any harm that outweighs these considerations, the Court recognizes that the equities
and interests may weigh differently as time passes if there is undue delay in the arbitration
process. Thus, the Court will continue to monitor the status of the arbitration proceeding.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Walmart's motion to compel individual arbitration as to all claims, except for Shugars' representative PAGA claim. Additionally, the Court GRANTS Walmart's motion to stay this action in its entirety until arbitration concludes. The parties shall file an initial joint status report regarding arbitration by October 15, 2025, and updated joint status reports every six months thereafter. If the parties resolve the claims at issue, through arbitration or otherwise, the parties shall notify the Court within seven days of the resolution.

In light of the stay, the initial case management deadlines set forth in the Court's December 31, 2024 Order, ECF No. 38, are VACATED.

**IT IS SO ORDERED.**

Dated: March 12, 2025

Eumi K. Lee
United States District Judge